UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ELVIRA ALEJANDRE PONCE GARCIA,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. 18-cv-01764-KAW

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 24, 31

Plaintiff Elvira Alejandre Ponce Garcia seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for payment of benefits, or, in the alternative, for further proceedings.

Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Having considered the papers filed by the parties, and for the reasons set forth below, the Court GRANTS Plaintiff's motion for summary judgment and DENIES Defendant's cross-motion for summary judgment.

## I. BACKGROUND

Plaintiff applied for Title II and Title XVI benefits on October 21, 2014. (Administrative Record ("AR") 143.) Plaintiff asserted disability beginning June 19, 2014. (AR 143.) The Social Security Administration ("SSA") denied Plaintiff's application initially and on reconsideration. (AR 75-79, 83-87.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 88-89.)

The ALJ considered a number of opinions in rendering a decision. On January 22, 2014, Plaintiff's treating physician, Will Sheldon, M.D., saw Plaintiff for chronic back pain. (AR 252.) He found that she was fine overall, and that her pain improved when she was moving around and

active. Plaintiff also stated that she was no longer taking Celexa and that she did not want to take it anymore. (AR 252.) Dr. Sheldon reviewed a January 2012 MRI of the lumbar spine, which showed mild-moderate multilevel DDD with small central disc protrusions. (AR 332.) He observed that Plaintiff used to be on chronic opiates, but they were discontinued due to negative urine toxicity screens for opiates even when Plaintiff said she was taking Vicodin. (AR 332.)

In June 2014, Plaintiff reported that her back pain was improved and not a current complaint. (AR 254.) On July 8, 2014, Plaintiff reported a flare up of her back pain, with no radiation down the leg. (AR 256.) She requested a letter stating that she did not have to work for the time being. (AR 257.) Dr. Sheldon agreed to fill out the letter, but stated that he would be monitoring her closely to see if she was complaint with her full course of physical therapy. (AR 257.) On July 17, 2014, Plaintiff's physical therapist found decreased muscle bulk in the lower paraspinal muscles, possibly compromised by Plaintiff's history of low back problems. (AR 259.) On July 22, 2014, Plaintiff's physical therapist stated Plaintiff was non-compliant. (AR 261.) In August 2014, Plaintiff informed her physical therapist that she had mild pain in the mornings, and that she would be starting work full-time the following week. (AR 262, 263.)

On September 4, 2014, Plaintiff reported to Dr. Sheldon that she had stopped working after one week due to back pain. (AR 264.) She also reported missing some of her physical therapy appointments. (AR 264.) On September 30, 2014, Dr. Sheldon recommended exercise, physical therapy, medication, and stress relief, and advised Plaintiff that he would "defer decision on if she qualifies for [social security] to the [social security] evaluating doctor." (AR 269.) Dr. Sheldon wrote a letter stating that Plaintiff should be kept off work for another month. (AR 269.)

On November 12, 2014, Plaintiff saw Dr. Sheldon for her back pain and depression. (AR 358.) Plaintiff stated that her depression was triggered by worry regarding her family finances, and that her depression intensified her pain symptoms. (AR 361.) Dr. Sheldon observed Plaintiff as someone who was depressed, and referred her to a community art intervention. (AR 362.)

On November 18, 2014, a non-examining state agency physician found that Plaintiff had severe impairments related to unspecified arthropathies (a disease of the joint) and a disorder of the muscle, ligament, and fascia. (AR 59.) Plaintiff was found to be not disabled.

On November 25, 2014, Plaintiff reported that she was taking Celexa for her depression, and that her symptoms had improved a little. (AR 364.) Plaintiff also informed Dr. Sheldon that her social security application was denied, and asked him to write a letter. (AR 364.) Dr. Sheldon, however, stated: "I am really not terribly supportive for this plaintiff. She appears to not be in dramatic pain, MRI didn't look too bad, doesn't have radiculopathy [symptoms]." (AR 364.)

On January 6, 2015, Dr. Sheldon had a follow-up with Plaintiff. (AR 366.) Plaintiff reported that she was "quite disabled." (AR 367.) Dr. Sheldon, however, found that "[b]y imaging and general appearance, patient does not seem like she should be so disabled." (AR 367.) On February 26, 2015, Dr. Sheldon wrote a letter stating that Plaintiff's ongoing back issue was preventing her from working, and asked that she be excused until further notice. (AR 330.)

On April 16, 2015, a non-examining state agency physician found that Plaintiff had severe impairments related to unspecified arthropathies and a disorder of the muscle, ligament, and fascia. (AR 69.) The state agency physician found that Plaintiff's affective disorder was non-severe. (AR 69.) Plaintiff was ultimately found not disabled. (AR 73.)

On June 30, 2015, Plaintiff had an x-ray that showed normal vertebral body alignment. (AR 409.) There were Schmorl's nodes involving the cephalad endplates of L3 and L5, small marginal osteophytes at several levels, and radiographically unremarkable pedicles. (AR 409.)

Following a hearing, the ALJ rejected Plaintiff's application on March 9, 2017. (AR 26-32.) A request for review of the ALJ's decision was filed with the Appeals Council on March 16, 2017. (AR 12.) Plaintiff submitted additional evidence, including a September 7, 2017 residual functional capacity questionnaire filled out by David Carey, M.D. (AR 36-37.) Based on a review of a November 2016 MRI of Plaintiff's lumbar spine, Dr. Carey opined that Plaintiff could sit, stand, and walk for half an eight-hour workday each. (AR 36.) Plaintiff could also occasionally lift up to twenty pounds, and never lift more than twenty pounds. Plaintiff could frequently carry up to ten pounds, occasionally carry up to twenty pounds, and never carry more than twenty pounds. She had no limitations on grasping, pushing and pulling, or fine manipulation. (AR 36.) Plaintiff could also occasionally bend, squat, crawl, climb, reach, stoop, crouch, and kneel. Dr. Carey opined that Plaintiff's pain was severe. (AR 37.)

Dr. Carey referred Plaintiff to rehabilitation therapy services for an evaluation. (AR 40.) The evaluation was conducted on August 21, 2017 by Joseph Sinay, occupational therapist. Mr. Sinay found that Plaintiff "appear[ed] to have severe Low back pain that impairs . . . her functional capacity," and that she "may benefit from a Light occupation that does not require heavy lifting, carrying, pushing, pulling, or prolonged standing." (AR 40.) He limited lifting and carrying to twenty pounds, and noted that Plaintiff's musculoskeletal evaluative tests indicated good strength except in the spine. (AR 40.) He further found that Plaintiff should be referred to physical therapy, cardiovascular conditioning, and strengthening and flexibility exercise. (AR 41.)

The Appeals Council denied Plaintiff's request for review on January 18, 2018. (AR 5.) On March 21, 2018, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). On December 20, 2018, Plaintiff filed her motion for summary judgment. (Plf.'s Mot., Dkt. No. 24.) On April 29, 2019, Defendant filed an opposition and cross-motion for summary judgment. (Def.'s Opp'n, Dkt. No. 31.) Plaintiff did not file a reply.

## II.     LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under Social Security Administration ("SSA") regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). At step one, the Commissioner determines whether a claimant is currently engaged in

4

substantial gainful activity. *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721. If the answer is no, the claimant is not disabled. *Id.* If the answer is yes, the Commissioner proceeds to step three, and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the fourth step in the sequential evaluation process is to determine the claimant's residual functional capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, he is not disabled. 20 C.F.R. § 404.1520(f). RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the burden of proof in steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001). The burden shifts to the Commissioner in step five. *Id.* at 954.

### III. THE ALJ'S DECISION

On March 9, 2017, the ALJ issued an unfavorable decision. (AR 26-32.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 19, 2014, the alleged onset date. (AR 28.)

At step two, the ALJ found Plaintiff had no severe impairments. (AR 29.) As an initial matter, the ALJ found that Plaintiff did have a medically determinable impairment of lumbar degenerative disc disease, related to Plaintiff's reports of back pain. (AR 28.) In support, the ALJ pointed to the January 2012 MRI. The ALJ, however, found that other medical conditions were less well-supported. (AR 29.) For example, there was no objective evidence supporting knee pain, as the doctor had found that the pain was likely a strain or mild arthritis that the doctor

expected would be resolved fairly soon.  (AR 29.)  There was also no objective evidence regarding Plaintiff's pain in her left hand, wrist, and arm; rather, Plaintiff was prescribed physical therapy and there was good improvement by June 2016.  (AR 29.)  Finally, while there were mentions of depression, including a prescription for Celexa, there was no evidence of a psychological evaluation to determine the nature or severity of the symptoms.  (AR 29.)  The ALJ also noted that Plaintiff stopped using Celaxa in January 2014, restarted Celaxa at some point, and then stopped again in November 2015 because she felt better without it.  (AR 29.)

With respect to the lumbar degenerative disc disease, the ALJ concluded it was not severe because it did not significantly limit Plaintiff's ability to perform basic work-related activities for twelve consecutive months.  (AR 29.)  The ALJ summarized Plaintiff's testimony that she was injured in a fall but continued to work for a number of years, and that her worst pain was in her lower back, extending to her left leg.  (AR 30.)  Plaintiff did some household chores such as making the bed and washing dishes.  Plaintiff stated she took Tylenol for pain, could walk for fifteen minutes at a time, and lift five to ten pounds, but that she could not bend, stoop, or crawl.  (AR 30.)

The ALJ found that while Plaintiff's impairments could be expected to produce the alleged symptoms, her "statements concerning the intensity, persistence, and limiting effects of thee symptoms are not entirely consistent with the medical evidence and other evidence . . . ."  (AR 30.)  The ALJ explained that clinical observations showed that Plaintiff felt better when she was active, and that she no longer reported back pain in June 2014.  When the pain returned in July 2014, the pain did not affect her lower extremities.  She was referred to physical therapy, but was not compliant.  (AR 30.)  In August 2014, Plaintiff reported being ready to return to work and having no pain except when she first got up, but stopped work a week later and missed her physical therapy appointments.  (AR 30.)

The ALJ further explained that the objective evidence was not consistent with any worsening in Plaintiff's back condition.  The June 2015 x-ray showed normal vertebral body alignment, Schmorf's nodes, and small, marginal osteophytes, as well as radiographically unremarkable pedicles.  (AR 31.)  Further, a January 2012 MRI showed mild-moderate multilevel

DDD.

With respect to medical opinions, the ALJ noted that in September 2014, Dr. Sheldon had deferred a decision on disability to the SSA, although he agreed to sign a letter putting Plaintiff off work for one month. (AR 31.) In November 2014, Dr. Sheldon stated that he was not "terribly supportive" of Plaintiff's social security application. (AR 31.) In January 2015, Dr. Sheldon stated that while Plaintiff claimed to be "quite disabled," he did not think she should be so disabled based on imaging and her general appearance. The ALJ acknowledged that in February 2015, Dr. Sheldon wrote that Plaintiff "has been ill and unable to work" due to back problems, and that she should be excused from work until further notice. (AR 31.) The ALJ, however, found that Dr. Sheldon's earlier statement outweighed the probative value of the February 2015 letter, based on Dr. Sheldon's failure to specify the length of time for Plaintiff's inability to work and the lack of evidence of a worsening condition. (AR 31.)

Giving great weigh to Dr. Sheldon's observations about Plaintiff's capabilities, the ALJ concluded that the evidence did not demonstrate functional limitations that would persist for a period of at least twelve months. (AR 31.) While Plaintiff had presented opinions from treating doctors, their conclusions were dependent on her subjective representations rather than clinical or objective imaging evidence. (AR 31.)

The ALJ further noted that while the state agency consultants found that Plaintiff's spine impairment should be considered severe, the ALJ was not persuaded because "they did not adequately consider the very mild clinical and objective findings." (AR 31.) Additionally, even if Plaintiff's impairment was severe, the consultants still limited her to no less than nearly the full range of medium exertional work, such that the ALJ would still have been likely to find that Plaintiff was not disabled. (AR 31-32.)

## IV.    DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds. First, Plaintiff argues that the ALJ improperly rejected medical evidence in finding no severe impairments. (Plf.'s Mot. at 7.) Second, Plaintiff contends that the ALJ failed to adequately explain why he rejected Plaintiff's testimony. (*Id.* at 14.)

### A. Medical Evidence

Plaintiff argues that the ALJ improperly rejected the physician opinions, offering conclusions and "substitut[ing] his own lay opinion for that of medical professionals." (Plf.'s Mot. at 10, 12.) The Court disagrees.

With respect to the physician opinions, Plaintiff points to Dr. Sheldon prescribing Plaintiff Celexa for depressive symptoms. (Plf.'s St. at 11.) The ALJ, however, acknowledged that there were mentions of depression, but explained that there was no psychological evaluation to determine the nature and severity of Plaintiff's symptoms. (AR 29.) Dr. Sheldon did not opine as to whether those symptoms had any functional limitations on Plaintiff's ability to work, and Plaintiff points to no medical opinion or evidence that suggests Plaintiff's depression limited her ability to perform basic work activities. (*See* AR 332, 361-62.)

Plaintiff also points to Dr. Sheldon's February 2015 opinion that Plaintiff was unable to work. (Plf.'s St. at 11.) The ALJ, however, specifically explained why he gave that specific statement no weight, relying on Dr. Sheldon's earlier skepticism of Plaintiff's disability. (AR 31.) For example, in November 2014, Dr. Sheldon stated that he was not "terribly supportive" of Plaintiff's social security application. Likewise, in January 2015, Dr. Sheldon found that although Plaintiff stated she was "quite disabled," Dr. Sheldon believed she "does not seem like she should be so disabled" based on imaging and general appearance. (AR 31.) The ALJ gave those statements greater weight than the February 2015 opinion, which did not state how long Plaintiff should be off work or explain the discrepancy with Dr. Sheldon's prior statements. There was also no evidence of a worsening condition. The ALJ properly considered Dr. Sheldon's overall opinions in his consideration of whether Plaintiff had a severe impairment. (*See* AR 31.)

Additionally, Plaintiff points to Dr. Carey's RFC questionnaire and Mr. Sinay's rehabilitation therapy functional testing. Both opinions, however, were made *after* the ALJ's decision in March 2017, and presented to the Appeals Council. Per 20 C.F.R. § 404.970(a)(5), the Appeals Council will consider evidence that is "new, material, and relates to the period **on or before** the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." (Emphasis added.) Thus, Courts have

rejected the reliance on medical opinions that were dated after the ALJ's decision. *E.g.*, *Lee v. Berryhill*, Case No. 17-cv-4858-RMI, 2019 WL 415580, at *8 (N.D. Cal. Feb. 1, 2019) ("The three reports dated after the date of the hearing decision do not negate the ALJ's unfavorable finding."); *Smith v. Berryhill*, Case No. 16-cv-3934-SI, 2017 WL 993072, at *12-13 (N.D. Cal. Mar. 15, 2017) (finding medical opinions were not improperly rejected where the opinions "d[id] not involve any evaluations, treatment, or other contact with plaintiff during the period prior to the ALJ's . . . decision"). Here, Dr. Carey's opinion appears to be based on Plaintiff's last visit on August 23, 2017, and the RFC questionnaire was completed on September 7, 2017. (AR 37.) Likewise, Mr. Sinay's test results were based on an August 21, 2017 evaluation, and completed on August 23, 2017. (AR 40.) As both opinions postdate the ALJ's decision, the opinions do not negate the ALJ's unfavorable decision.

Finally, Plaintiff points to the state agency consultants' opinions that Plaintiff had a severe impairment. (Plf.'s Mot. at 11-12.) The ALJ, however, explained why he rejected this finding, noting that the clinical and objective findings were very mild. (AR 31.) This was also after giving great weight to Dr. Sheldon's observations that Plaintiff did not appear to be disabled. (AR 31.) The Court finds that the ALJ did not err in rejecting the state agency consultants' opinion that Plaintiff had a severe impairment.

As for the medical evidence, Plaintiff generally summarizes the various medical results, but provides no explanation for why this evidence would show that Plaintiff's spine impairment was severe. (*See* Plf.'s Mot. at 10-11.) For example, Plaintiff points to a prolapsed bladder and uterus requiring surgical repair and weight gain, but does not explain how either affects her ability to work. (*Id.* at 10-11.) Plaintiff also points to the January 2012 MRI and June 2015 x-ray, but again does not explain how these exam results would result in limitations to her ability to work. (*Id.* at 10-11.) Without more, the Court does not find error in the ALJ's consideration of the medical evidence.

### B.    Plaintiff's Testimony

The Court, however, finds that the ALJ did err in evaluating Plaintiff's testimony. In evaluating a claimant's testimony regarding subjective pain or other symptoms, an ALJ must

engage in a two-step inquiry. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). An ALJ must first "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotations and citations omitted). At this step, a claimant need not show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (internal quotation and citations omitted). Next, if a claimant meets this first prong and there is no evidence of malingering, the ALJ must then provide "specific, clear, and convincing reasons" for rejecting a claimant's testimony about the severity of her symptoms. *Id.*

The Court finds that the ALJ erred by not specifically identifying which of Plaintiff's statements he found not credible and why. The Ninth Circuit has found error where an ALJ concluded that a claimant's functional limitations were less serious than alleged "based on unspecified claimant testimony and a summary of medical evidence." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Specifically, the ALJ "simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination. This is not the sort of explanation or the kind of 'specific reasons' [the court] must have in order to review the ALJ's decision meaningfully, so that [the court] may ensure that the claimant's testimony was not arbitrarily discredited." *Id.* at 494.

Here, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record," but did not identify which of Plaintiff's statements specifically was inconsistent with which medical findings or opinions. Instead, as in *Brown-Hunter*, the ALJ made the credibility finding before summarizing the medical evidence supporting his determination that there was no severe impairment. While Defendant correctly observes that the ALJ did point to certain evidence that Plaintiff felt better when active and that she was not complaint with physical therapy, the ALJ did not actually state that these were reasons for discrediting Plaintiff's testimony or why. (*See* AR 30; Def.'s Opp'n at 7.) Defendant cannot use *post hoc* rationales to justify the

ALJ's conclusion. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ -- not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking"). In any case, the ALJ did not point to which specific statements by Plaintiff were inconsistent. This failure to identify specific testimony and explain the inconsistencies constitutes error that prevents the Court from "discern[ing] the agency's path because the ALJ made only a general credibility finding without providing any reviewable reasons why [he] found [Plaintiff's] testimony to be not credible. . . . [P]roviding a summary of medical evidence in support of a residual functional capacity finding is not the same as providing clear and convincing *reasons* for finding the claimant's symptoms testimony is not credible." *Brown-Hunter*, 806 F.3d at 494.

Accordingly, the Court finds that the ALJ erred and that remand is necessary to allow the ALJ to determine the extent to which Plaintiff's pain and accompanying symptoms affect her disability claim. *See Brown-Hunter*, 806 F.3d at 495-96 (remanding for further proceedings to allow the ALJ to make a proper disability determination in the first instance where the ALJ failed to specify which determination was found not credible and why). This includes resolving any factual conflict in the record, including the medical reports. *See id.* at 496.

### V. CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's motion for summary judgment and DENIES Defendant's cross-motion for summary judgment. The case is remanded for further proceedings, consistent with this opinion.

IT IS SO ORDERED.

Dated: September 30, 2019

KANDIS A. WESTMORE
United States Magistrate Judge